UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN M. EARL,

       Petitioner,                                  Civil No. 04-10014
                                                          Honorable David M. Lawson

v.

BLAINE LAFLER,

       Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On a summer evening in 1999, the petitioner, DeShawn M. Earl, was driving his gold Chevrolet Caprice in the City of Hamtramck while intoxicated. When the police attempted to stop him, Earl fled and engaged the police in a chase, which ended tragically in the death of another motorist. In April 2000, Earl pleaded *nolo contendere* to and was convicted in the Wayne County, Michigan circuit court of second-degree murder, Mich. Comp. Laws § 750.317; fleeing and eluding resulting in death, Mich. Comp. Laws § 750.479a(5); operating a motor vehicle under the influence of liquor causing death, Mich. Comp. Laws § 257.625(4); and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. He was sentenced to concurrent prison terms of ten to thirty years on the second-degree murder conviction and seven to fifteen years on the other convictions. He is now confined at the Boyer Road Correctional Facility in Carson City, Michigan and has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Earl alleges that his no contest plea was invalid because it was not knowing and voluntarily, he was denied the effective assistance of counsel at his plea and sentencing, he lacked the capacity to form the necessary intent to cause death, and the prosecution abused its charging power. The respondent has filed an answer to the petition asserting that the petition is barred by the one year statute of limitations and the

claims are unexhausted, non-cognizable, or lack merit because the decisions of the Michigan courts did not result in an objectively unreasonable application of clearly established federal law. The Court finds that Earl's claims are not time-barred, but they lack merit, and therefore the petition will be denied.

I.

The petitioner's no contest plea was made pursuant to a sentence agreement authorized by the practice endorsed in *People v. Cobbs*, 443 Mich. 276; 505 N.W.2d 208 (1993). Under the agreement, the trial court promised that it would impose a minimum prison sentence of no more than ten years on the second-degree murder charge. Before accepting petitioner's plea, the trial court advised petitioner of the constitutional rights that he was relinquishing by pleading no contest. The court stated:

> [Y]ou do understand that by pleading today you are giving up certain rights. And included in those rights is the right to have a trial [b]y jury. If you did not want a trial by jury, you could have one by the Court.
> At that trial, Mr. Earl, you would be presumed innocent until proven guilty. And the prosecution would have to prove your guilt beyond a reasonable doubt.
> At that trial witnesses would have to appear and testify against you. And you would have the right to confront your accusers and question any witnesses.
> If you wanted witnesses brought down to that trial on your behalf, this Court would order those witnesses down to the trial.
> Mr. Earl, at that trial you would have the right to remain silent, and your silence could not be used against you. If you wanted to testify, you could so testify.

Plea Hr'g Tr., 4/4/2000, at 10. The petitioner, who was represented by counsel, stated that he understood he was waiving those rights. The petitioner admitted that no one had promised him anything other than the minimum sentence cap or threatened him to induce his no contest plea. The trial court also advised petitioner of the maximum possible penalties for second-degree murder,

fleeing and eluding resulting in death, and drunken driving causing death. The state prosecutor recited the facts of the crime from which the court found a factual basis for the petitioner's guilt.

At the sentence hearing on May 12, 2000, the petitioner asked to withdraw his plea, claiming that his lawyer "lied too much" in this case. Sentence Hr'g Tr., 5/12/2000, at 4-5. The trial court refused to allow the petitioner to withdraw his plea and then sentenced the petitioner to ten to thirty years in prison on the second-degree murder conviction and seven to fifteen years on the fleeing and eluding and drunken driving convictions. As noted, the sentences run concurrently.

A short time later, the petitioner, through appellate counsel, moved to withdraw his no contest plea. At a hearing conducted on the motion on August 16, 2001, petitioner's appellate counsel argued that the plea should be withdrawn on "double jeopardy, maybe triple jeopardy" grounds and prosecutorial overcharging. Mot. Hr'g Tr., 8/16/2001, at 3-4. The trial court denied the motion.

On direct appeal, the petitioner argued that he was entitled to withdraw his no contest plea because he was denied his constitutional guarantee of effective assistance of counsel, his plea was involuntary and unknowing, and the prosecutor abused his discretion by overcharging him. The state court of appeals affirmed the conviction, and the state supreme court denied the ensuing application for leave to appeal. *People v. Earl,* No. 236404 (Mich. App. October 8, 2001); *lv. den.* 466 Mich. 867; 645 N.W.2d 660 (2002).

The petitioner then filed the present petition for writ of habeas corpus and an amended petition for writ of habeas corpus, in which he seeks habeas relief on the following grounds:

    I.       Petitioner was denied his Sixth Amendment right to the effective assistance of counsel during guilty plea and sentencing stages. As a result, his guilty [sic] plea should be withdrawn.

II. Petitioner should have been allowed to withdraw his guilty [sic] plea where it was involuntary and unknowingly [made] as a result of ineffective assistance of counsel which also resulted in petitioner being denied the right to present a defense.

II-A. Petitioner did not possess the capacity to form the necessary intent to cause death.

III. Petitioner also should have been allowed to withdraw his plea because the prosecution abused its charging power.

The state responded with an answer that addressed the merits of the petition but also raised the procedural defenses of the statute of limitations bar and failure to exhaust one of the claims. In his response, the petitioner has moved to withdraw claim II-A, admitting that it is not exhausted and therefore "is not properly before this Court." Pet.'s Resp. at 4 [dkt #22].

II.

Turning first to the respondent's argument that the petition is time-barred, it is well established that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, became effective on April 24, 1996 and governs the filing date for the habeas application in this case because petitioner filed his petition after the AEDPA's effective date of the Act. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA amended 28 U.S.C. § 2244 to include a new, one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments. *See Vroman v. Brigano*, 346 F.3d 598, 601 (6th Cir. 2003). The one year statute of limitations runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such a review. *See* 28 U.S.C. § 2244(d)(1)(A). A habeas petition filed outside the time period prescribed by this section must be dismissed. *Isham v. Randle*, 226 F.3d 691, 694 (6th Cir. 2000) (case filed thirteen days after the

limitations period expired dismissed for failure to comply) *abrogated on other grounds by Abela v. Martin*, 348 F.3d 164, 172 (6th Cir.2003) (en banc).

Direct review of the petitioner's conviction ended in this when the Michigan Supreme Court denied him leave to appeal on May 29, 2002. The petitioner's conviction became final for the purpose of the AEDPA when the 90-day time period for seeking certiorari in the United States Supreme Court expired. *See Bronaugh v. Ohio*, 235 F. 3d 280, 283 (6th Cir. 2000), which works out to August 27, 2002, because Earl did not file a certiorari petition. *See Jackson v. Straub,* 309 F. Supp. 2d 952, 956 (E.D. Mich. 2004). Absent any tolling, petitioner was required to file his petition in this Court by August 27, 2003 in order for it to be filed timely.

In his initial petition and in his response to the respondent's answer, the petitioner claims that he tried to file a petition for writ of habeas corpus in this Court on May 13, 2003, which would have been within the one year limitations period, but that the petition was somehow lost or misplaced either by the Michigan Department of Corrections, the United States Postal Service, or the federal district court clerk's office. The petitioner has attached a Michigan Department of Corrections Disbursement Authorization for Expedited Legal Mail dated May 14, 2003, which authorized the payment of a five dollar filing fee for a new case to the United States District Court Clerk at the Theodore Levin Courthouse in Detroit, Michigan. Although petitioner does not specifically indicate that this receipt is for a habeas case, this Court takes judicial notice of the fact that the filing fee for a habeas case is $5. Petitioner has also attached a second Michigan Department of Corrections Disbursement Authorization dated May 14, 2003, which authorized the payment of postage for the mailing of a copy of a § 2254 petition for writ of habeas corpus to the Michigan Attorney General's Office.

On October 15, 2003, petitioner wrote a letter to then-Chief Judge Lawrence P. Zatkoff informing him that he had mailed a *pro se* section 2254 habeas petition to this Court. He asked Judge Zatkoff to check on the status of his habeas petition. After obtaining no response from the Court for two months, the petitioner wrote Magistrate Judge Paul J. Komives to inquire into the status of his petition. When the petitioner received no response from Magistrate Judge Komives, he sent letters to David Weaver, the court executive for the United States District Court for the Eastern District of Michigan, and to Leonard Green, the Clerk of the United States Court of Appeals for the Sixth Circuit, without allegedly receiving a response from either.

On November 17, 2003, the petitioner also sent a letter to Associate Justice John Paul Stevens of the United States Supreme Court, Circuit Justice for the Sixth Circuit. The petitioner requested assistance from Justice Stevens in determining whether his habeas petition had been filed with this Court. On December 10, 2003, the Clerk of the United States Supreme Court wrote the petitioner that it had no authority to conduct such an investigation.

On November 17, 2003, the petitioner sent a letter to the Saginaw Correctional Facility Business Office inquiring into the whereabouts of his habeas petition and the filing fee. The business office responded to the petitioner that they had forwarded his check and pleadings to this Court, but a subsequent tracer to the State Treasury revealed that the check for the filing fee had never been cashed.

On December 17, 2003, the petitioner sent another letter to David Weaver at the United States District Court for the Eastern District of Michigan, in which he attempted to re-file his habeas petition. On January 23, 2004, the Clerk of the Court rejected the petition because petitioner had failed to submit either a five dollar filing fee or an application to proceed *in forma pauperis*. On

March 29, 2004, the Clerk of the Court again rejected the petition because petitioner had failed to submit either a five dollar filing fee or an application to proceed *in forma pauperis*. Finally, the current habeas petition was accepted for filing on April 5, 2004.

Under the prison mailbox rule, a pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). Courts in the Sixth Circuit apply the rule in civil matters when a *pro se* plaintiff is incarcerated at the time of filing. *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (holding that a complaint placed in the prison mail system before the expiration of a statute of limitations tolled the applicable limitation). Based on the evidence submitted, the Court is satisfied that the petitioner signed, dated, and gave his petition to a prison official for mailing within the one-year limitation period prescribed by 28 U.S.C. § 2244(d)(1)(A).

Moreover, the record plainly establishes that the petitioner is entitled to equitable tolling under the five factors set forth in *Dunlap v. United States*, 250 F. 3d 1001, 1004 (6th Cir. 2001). The petitioner knew of the filing requirement but did all that was within his power to comply. The petitioner he has submitted persuasive documentary evidence to this Court that he submitted a petition for writ of habeas corpus to prison officials to mail to this Court within the one year limitations period, the pleadings were either lost or misplaced, and he was diligent in attempting to inquire into the status of his habeas petition. The respondent can show no prejudice if the Court addresses the merits of the petition. The Court, therefore, finds that the petition is timely.

III.

The AEDPA also amended the federal habeas statutes to "circumscribe" the standard of review federal courts must apply when considering applications for a writ of habeas. *See Wiggins*

*v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

The petitioner contends that he should have been allowed to withdraw his no contest plea because his lawyer was incompetent and the prosecutor over-charged him. The ineffective-assistance-of-counsel claim includes two arguments: that his lawyer did not perform properly at the

plea and sentencing phases; and his plea was rendered involuntary because his lawyer's conduct denied him the right to present a defense.

A.

The petitioner's first argument that his lawyer was ineffective is not well developed, and it appears that he is complaining about the advice he was given in the time leading up to plea about available defenses, most notably the voluntary intoxication defense. That claim is repeated in the argument that counsel was ineffective for failing to investigate or to pursue an intoxication defense in this case. The petitioner contends that the failure of his lawyer to explain this defense to him or assert it during the proceedings rendered his no contest plea involuntary and he should have been able to withdraw it. The Court will discuss these two arguments focusing on trial counsel's performance as one.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

*Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty or *nolo contendere* plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990). The first prong of the test remains the same. *Ibid.* However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded [*nolo contendere*] and would have insisted on going to trial." *Ibid.*; *Carter*, 918 F.2d at 1200; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* at 59; *see also Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001) (a habeas petitioner who alleges that a guilty plea was entered as the result of ineffective assistance of counsel must show that, but for counsel's errors, he or she would not have pleaded guilty, because there would have

been at least a reasonable chance that he or she would have been acquitted). "If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him." *Holtgreive v. Curtis,* 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001).

The petitioner has failed to show a reasonable probability that he could have prevailed at trial on his intoxication defense or that he would have received a lesser sentence. After all, he was charged with *drunken* driving causing death. His driving while drunk was part of the fact complex that established the reckless conduct that proved the mental state for second-degree murder as well. A review of the factual basis that was provided by the prosecutor from the investigator's report at the time of the no contest plea, as well as the petitioner's own description of the offense, establishes that the petitioner was driving his truck at high rates of speed on Dequindre Road in Detroit, Michigan in an attempt to elude the police. One expert estimated that the petitioner's speed reached between eighty-one and ninety-one miles per hour. The petitioner also disregarded several red traffic lights. The petitioner's motor vehicle collided with the victim's motor vehicle while traveling at an estimated eighty-one miles per hour in a twenty-five mile per hour zone. He also had a blood alcohol level of .095% by weight.

To prove the malice (intent) element of second-degree murder, the state must establish that the defendant either:(1) intended to kill or do great bodily harm to the victim, or (2) committed a wanton and wilful act the natural tendency of which is to cause death or great bodily harm. *People v. Klave*, 130 Mich. App. 388, 395-96, 343 N.W.2d 565, 568 (1983). Under state law, malice for second-degree murder can be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. *People v. Djordjevic*, 230 Mich. App. 459, 462,

584 N.W.2d 610, 612 (1998); *see also Hill v. Hofbauer,* 195 F. Supp. 2d 871, 885 (E.D. Mich. 2001). The offense of second-degree murder "does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Mayhew*, 236 Mich. App. 112, 125, 600 N.W.2d 370, 379 (1999).

The facts established at the plea hearing demonstrated the mental state for second-degree murder, particularly because the petitioner's intoxication was included. His counsel was not ineffective for not pressing a voluntary intoxication defense because such a defense would fail. Second-degree murder and fleeing and eluding a police officer are general intent crimes for which voluntary intoxication is not a defense. *See People v. Longworthy*, 416 Mich. 630, 651, 331 N.W.2d 171, 179-80 (1982); *People v. Abramski,* 257 Mich. App. 71, 72-73, 665 N.W.2d 501, 503 (2003). The idea that voluntary intoxication might be a defense to drunken driving is fanciful.

Because intoxication is not a defense under Michigan law to any of these crimes, trial counsel was not ineffective for failing to advance or to investigate this defense in lieu of petitioner entering a no contest plea. *See Smith v. Groose,* 998 F. 2d 1439, 1441-42 (8th Cir. 1993) (counsel was not ineffective for failing to advise defendant of intoxication defense, where intoxication defense was unavailable under Missouri law for first-degree assault). The petitioner is not entitled to habeas relief on his claim(s) of ineffective assistance of counsel.

B.

In his third claim, the petitioner contends that the prosecutor abused his charging power by charging him with second-degree murder plus the two other offenses. The respondent argues that this claim is unexhausted because it was presented to the state appellate courts only as a state law claim. The Court need not address the exhaustion argument because an unexhausted claim may be

rejected if it lacks merit. *See Burton v. Bock,* 239 F. Supp. 2d 686, 691 (E.D. Mich. 2002) (citing 28 U.S.C. § 2254(b)(2); *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991)).

Although the petitioner's argument has a superficial logical appeal that a single death should not result in conviction of multiple death-related crimes, the Supreme Court "has long recognized" that when a criminal act violates more than one criminal statute, the government may prosecute under either statute as long as discrimination against any class of defendants does not result. *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979). Prosecutors therefore enjoy considerable discretion in determining what criminal charges to bring. *Ibid.; see also Grant v. Rivers*, 920 F. Supp. 769, 787 (E.D. Mich. 1996). That prosecutors may be influenced in making a charging decisions by the penalties available on conviction does not give rise to a constitutional violation. *Batchelder*, 442 U.S. at 125. A criminal defendant has no constitutional right to elect which of two crimes will be the basis for a criminal information, nor is he entitled to chose the penalty scheme under which he will be sentenced. *Ibid.* Therefore, the state committed no impropriety in choosing to include second-degree murder among the array of charges leveled against the petitioner.

Moreover, any double jeopardy claim that the petitioner is now asserting was waived by his plea of no contest. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (noting that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process [so that] he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards]"); *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001).

An exception to this general rule in the double jeopardy context when it is plain from the language of the charging document that no legally cognizable additional crime was charged to which the defendant properly could have entered a plea of guilt. *Broce*, 488 U.S. at 576 ("Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes."). Such is not the case here.

In this case, the criminal information filed against the petitioner alleged one count of second-degree murder, one count of fleeing and eluding resulting in death, and drunken driving causing death. These crimes are not the same under the Double Jeopardy Clause, which provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This constitutional provision protects individuals not only from successive trials, but also prohibits multiple punishments for the same offense. *Hampton v. Hobbs*, 106 F. 3d 1281, 1288 (6th Cir. 1997). However, "a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause." *Albernaz v. United States*, 450 U.S. 333, 344, n. 3 (1981); *see also United States v. Kuhn*, 165 F. Supp. 2d 639, 642 (E.D. Mich. 2001).

In assessing whether two defined crimes are indeed separate, the Court must determine "whether [the legislature] intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir. 1980) *(quoting Jeffers v. United States*, 432 U.S. 137, 155 (1977)). "To determine the [legislative] intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction." *Pandelli,* 635 F. 2d at 536. If the legislative intent is not clearly expressed or cannot be discerned by accepted techniques of statutory construction, then the Court must analyze the two crimes to see if the

elements completely overlap according to the test expressed by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932), which remains the standard to determine whether double jeopardy prohibits multiple punishments for the same criminal act. *United States v. Barrett*, 933 F. 2d 355, 360 (6th Cir. 1991); *Kuhn*, 165 F. Supp. 2d at 642-43. "The Court focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction. . . . If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Barrett*, 933 F.2d at 360-61 (internal citations and quotes omitted). The Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation. *See United States v. Dixon*, 509 U.S. 688, 696 (1993) (holding that the question is "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution.").

Michigan courts have held that a defendant's convictions for second-degree murder and drunk driving causing death does not violate the Double Jeopardy Clause because the state legislature intended that each crime enforce distinct societal norms. *People v. Werner,* 254 Mich. App. 528, 535-36; 659 N.W.2d 688, 694 (2003). Moreover, the Michigan appellate court has noted that the drunk-driving-causing-death statute and the second-degree murder statute each contained an element not found in the other statute: "[T]he OUIL causing death statute includes the element of operating a motor vehicle with a specified blood alcohol level, but not the element of malice; the converse is true of the second-degree murder statute." *Ibid.*

With respect to the fleeing and eluding charge, the Michigan legislature explicitly stated that "a conviction under this section [for fleeing and eluding] does not prohibit a conviction and sentence

under any other applicable provision for conduct arising out of the same transaction." Mich. Comp. Laws § 750.479a(8). The Michigan legislature's clear intent contained in this subsection of the fleeing and eluding statute show that petitioner's convictions for second-degree murder, fleeing and eluding resulting in death, and O.U.I.L. causing death do not violate the constitutional protections against double jeopardy. The petitioner is not entitled to habeas relief on his third claim.

C.

Finally, the petitioner mentions in his petition that he is entitled to habeas relief because of the cumulative effect of the alleged errors in the state courts. Because the petitioner's discrete claims lack merit, he cannot establish that habeas relief is warranted based upon a claim of cumulative error. *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006). The Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). The petitioner is not entitled to habeas relief.

IV.

For the foregoing reasons, the Court finds the petitioner has not shown that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

                                      s/David M. Lawson
                                      DAVID M. LAWSON
                                      United States District Judge

Dated: September 30, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 30, 2007.

          s/Felicia M. Moses
          FELICIA M. MOSES